**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

**UNITED STATES OF AMERICA,**

**v.**                                                     **Case No. 18-CR-170 (KBJ)**

**JAMES A. WOLFE**

**DEFENDANT JAMES A. WOLFE'S MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF HIS MOTION FOR ORDER GOVERNING
EXTRAJUDICIAL STATEMENTS UNDER LOCAL CRIMINAL RULE 57.7(c)**

Defendant James A. Wolfe, through counsel, respectfully requests an Order restricting

the government's extrajudicial commentary in this matter pursuant to Local Criminal Rule

57.7(c).  Criminal defendants have a fundamental constitutional right to a fair trial by an

impartial jury.  That right is jeopardized when government officials make inflammatory,

misleading pretrial statements to the public about a defendant or his or her case, particularly

when those statements are highly publicized.  That, unfortunately, is exactly what has occurred

here and we respectfully request an order from this Court to prevent it from happening again.

## ARGUMENT

The morning after Mr. Wolfe's evening arrest on June 7, 2018, President Donald J.

Trump announced that the Department of Justice had just "caught a leaker.  It's a very important

leaker. . . . You cannot leak classified information."[1]  At the time these comments were made,

---

[1] Eileen Sullivan & Katie Brenner, *Trump praises arrest of former Senate Committee Aide in Leaks Inquiry*, N.Y. Times, (June 8, 2018), https://www.nytimes.com/2018/06/08/us/politics/trump-leak-investigation.html (Exhibit 1); Clare Foran & Laura Jarrett, *Trump says prosecutors 'caught a leaker' after former Senate staffer charged with lying to investigators*, CNN (June 8, 2018), https://www.cnn.com/2018/06/08/politics/trump-leakers-senate-intel/index.html (Exhibit 2);

Mr. Wolfe had not yet appeared for his arraignment, much less had his charges considered by counsel, a judge, or a jury, all of which he is guaranteed under the U.S. Constitution.  Yet President Trump informed the world that Mr. Wolfe was in fact ***guilty*** – a "leaker" who had been caught – pronouncing his arrest a "terrific thing" and implying falsely that the conduct involved leaking classified information.[2]  But the Indictment ***does not actually charge Mr. Wolfe with leaking anything***, and contains no allegation that he disclosed or mishandled classified information in any way.

These prejudicial and improper statements were immediately and widely disseminated by the national news media.[3]  Further, Assistant Attorney General John Demers publicly called the case "doubly troubling" because it concerns the "unauthorized disclosure of sensitive and confidential information,"[4] when the Indictment refers only to the disclosure of information "not otherwise publicly available."[5]  Indictment ¶¶ 33, 35.

---

David Lauter & Eliza Fawcett, *Indicted former Senate staffer appears in court as Russia leak inquiry sets off partisan fireworks*, L.A. Times (June 8, 2018), http://www.latimes.com/politics/la-na-pol-leak-indictment-20180608-story.html (Exhibit 3).

[2] *Id.*

[3] *See, e.g.*, *id.*

[4] Press Release, Department of Justice, U.S. Attorney's Office, Former U.S. Senate Employee Indicted on False Statements Charges, (June 7, 2018), https://www.justice.gov/usao-dc/pr/former-us-senate-employee-indicted-false-statements-charges (Exhibit 4).  We do not ascribe any inappropriate commentary addressed in this motion to the Assistant U.S. Attorneys handling this matter.

[5] These statements also appear to contravene Department of Justice policy permitting discussion of only the "substance" of a charge.  *See* U.S. Attorneys' Manual § 1-7.500 (Release of Information in Criminal, Civil, and Administrative Matters – Disclosable Information.   The government's press release inappropriately commented on Mr. Wolfe's character, warning that "[t]hose entrusted with sensitive information must discharge their duties with honesty and integrity, and that includes telling the truth to law enforcement," and characterizing Mr. Wolfe's conduct as "a betrayal of the extraordinary public trust that had been placed in him."  Exhibit 4.

Mr. Wolfe's Sixth Amendment right to an impartial jury and the presumption of innocence have been jeopardized by presidential comments about the merits of the case ("caught a leaker") and highly prejudicial insinuations – straying far from the language and substance of the Indictment and echoed by the Justice Department – that Mr. Wolfe leaked classified information.[6]  This Court, we respectfully submit, has both the duty and the means to preserve Mr. Wolfe's Sixth Amendment right to an impartial jury and the presumption of his innocence, and Mr. Wolfe respectfully requests that it do so.

Under Local Criminal Rule 57.7(c), the Court may "issue a special order governing such matters as extrajudicial statements by parties, witnesses and attorneys likely to interfere with the rights of the accused to a fair trial by an impartial jury."  The party seeking to convict Mr. Wolfe of a crime here is the "United States of America."   President Trump and senior Department of Justice officials, while not appearing as lawyers in this court, are unquestionably senior representatives of that party.   The Constitution vests the Executive power of the United States to enforce the laws in the President.  U.S. Const. art. II § 1.  As stated by President Trump himself,

---

As with the attempts to link Mr. Wolfe with leaking classified information, Mr. Wolfe is ***not*** charged with having abused the public trust.  *See generally infra* note 9 (regarding likely violations of Local Rules); U.S. Attorneys' Manual § 1-7.610 (Concerns of Prejudice) ("Because the release of certain types of information could prejudice an adjudicative proceeding, DOJ personnel should refrain from disclosing the following, except as appropriate in the proceeding or in an announcement after a finding of guilt: A. Observations about a defendant's or party's character").  As discussed in note 10, incanting "alleged" before making these types of remarks does not inoculate the government and certainly does not protect adequately a defendant's rights.

[6] The DOJ press release blurs the nature of the information at issue – never using the actual language in the Indictment ("not publicly available") but rather more inflammatory language ("the unauthorized disclosure of sensitive and confidential information").  Exhibit 4.

"I have absolute right to do what I want to do with the Justice Department."[7]  Absent relief from this Court, there is no reason to expect that President Trump will cease making public statements about Mr. Wolfe and this case.[8]

The Supreme Court has long recognized that "[f]ew, if any, interests under the Constitution are more fundamental than the right to a fair trial by 'impartial' jurors, and an outcome affected by extrajudicial statements would violate that fundamental right."  *Gentile v. State Bar of Nevada,* 501 U.S. 1030, 1075, 111 S.Ct. 2720, 2745 (1991).  "Due process requires that the accused receive a trial by an impartial jury free from outside influences" and "[n]either prosecutors, counsel for defense, the accused, witnesses, court staff nor enforcement officers . . . should be permitted to frustrate its function."  *Sheppard v. Maxwell*, 384 U.S. 333, 362-63, 86 S.Ct. 1507, 1522 (1966).  Thus, it is not only the Court's responsibility, but indeed "an affirmative constitutional duty to minimize the effects of prejudicial pretrial publicity."  *Gannett Co. v. DePasquale,* 443 U.S. 368, 378, 99 S.Ct. 2898, 2904 (1979).  And the Supreme Court has endorsed doing so by entering orders limiting extrajudicial commentary of trial participants. *Sheppard*, 384 U.S. at 361.

The order Mr. Wolfe seeks is narrow and is the least restrictive means available to ensure that Mr. Wolfe's rights are protected.  He does not seek any limitation on what can be reported about this case by the media, nor is he seeking to preclude all speech by the parties.  For

---

[7] Michael S. Schmidt & Michael D. Shear, *Trump Says Russia Inquiry Makes U.S. 'Look Very Bad,'* N.Y. Times (Dec. 28, 2017), https://www.nytimes.com/2017/12/28/us/politics/trump-interview-mueller-russia-china-north-korea.html (Exhibit 5).

[8] This President's near daily proclivity to discuss all manner of criminal investigations – including his views on guilt of individuals, appropriateness of sentences, and who and what should be investigated by the Department of Justice as well as attacks on the integrity of the judicial system – provides little to no comfort that his June 8, 2018 comments will be his last on this case. *See generally* @realDonaldTrump, Twitter, https://twitter.com/realDonaldTrump.

instance, accurate and limited public statements about the content of the Indictment or other filings or events occurring in court are customary and unobjectionable.  He seeks only to prevent the most visible and powerful representatives of the party seeking to convict him of serious crimes from making public statements that jeopardize his right to an impartial jury.

## I.     The Government Itself Has Already Made This a Widely Publicized or Sensational Case

Even before President Trump rendered his pre-arraignment verdict, this case was already front-page news throughout the nation, generating thousands of news stories or mentions.  The charges against Mr. Wolfe, and what has been reported about the investigation that led to them, read like a list of trending topics: the Administration's fixation on rooting out the source of alleged leaks; the Russia investigation by the Senate; and controversy regarding the seizure of a reporter's phone and e-mail records.

Numerous news organizations reported President Trump's premature conclusion that not only was Mr. Wolfe guilty, but he was guilty of ***actually*** leaking ***classified information***, even though the Indictment only charges Mr. Wolfe with making false statements, and about non-classified information.  The President's mischaracterization has gone uncorrected by the Justice Department.  And there is no indication that the level of press coverage of this case will abate, particularly as likely issues concerning the government's ability to obtain information from journalists are addressed.

## II.    Protecting Mr. Wolfe's Sixth Amendment Rights Requires a Restrictive Order Under Rule 57.7(c)

Absent an order under this Court's Local Criminal Rule 57.7(c), Mr. Wolfe's Sixth Amendment right to a fair trial is imperiled.  The Local Rule embodies concerns the Supreme Court has repeatedly expressed about the danger that extrajudicial statements pose to the right of a defendant to a fair trial, and it empowers the Court to issue the type of order we seek.  *See, e.g.*,

*United States v. Brown*, 218 F.3d 415, 428-29 (5th Cir. 2000) (upholding restrictive order against

extrajudicial commentary by trial participants where the cases at issue, involving Louisiana's

state Insurance Commissioner and a former Governor, were already the subject of "intense and

extensive media attention"); *United States v. Pawlowski et al.*, Case No. 5:17-cr-00390-JS, Dkt.

42 (E.D. Pa. Nov. 29, 2017) (restrictive order in corruption trial of Allentown mayor); *United*

*States v. Stanford et al.*, Case No. H-09-cr-342, Dkt. 307 (S.D. Tex. Sept. 30, 2010) (restrictive

order in R. Allen Stanford Ponzi scheme case) (Exhibit 6).[9]

The Court's authority to protect a defendant's right to an impartial jury and presumption

of innocence recently was invoked in another high profile case pending in this Court.  Judge

Amy Berman Jackson ordered "all interested participants in the [*United States v. Manafort*]

matter . . . to refrain from making statements to the media or in public settings that pose a

substantial likelihood of material prejudice to this case."  *United States v. Manafort et al.*, Case

No. 17-cr-0201-ABJ, Dkt. 38 (D.D.C. Nov. 8, 2017).

Substantial prejudice has already occurred here and it requires the remedy of a proactive

Order.  Recognizing that some commentary about arrests and charges is a valid and important

government function, the comments in this case go too far and no more such comments should

be made.[10]  The President's statements have been particularly prejudicial because they convict

---

[9] *See also United States v. Aldawsari*, 683 F.3d 660, 665 (5th Cir. 2012) (upholding restrictive
order in terrorism case, where "the allegations generated a good deal of media coverage that
highlighted Aldawsari's alleged radical Islamic views, bomb-making activities, and targeting of
former President George W. Bush"); *cf. In re Morrissey*, 168 F.3d 134, 140 (4th Cir. 1999)
(upholding Local Criminal Rule 57 of the Eastern District of Virginia, regarding extrajudicial
statements that "threaten the right to a fair trial and an impartial jury").

[10] The Department of Justice press release, discussed *supra*, also appears to have violated the
local rules by making statements attributed to senior Department officials that potentially
interfere with a fair trial or otherwise prejudice the due administration of justice," LCrR

Mr. Wolfe in the eyes of the public – and the potential venire – of conduct he is not charged

with.  He is charged only with making false statements regarding general and personal contacts

with reporters, and the disclosure of merely non-public information or a denial of a personal

relationship is a far cry from the improper leaking of classified information.[11]

       The Order we seek is also appropriately narrow.  Mr. Wolfe is not requesting any

limitation on what can be reported about this case by the media, and the Court's authority to

restrict the comments made by the participants, which includes the entirety of the Executive

Branch, is clear.  *See Gentile*, 501 U.S. at 1074 (permitting greater restrictions on participants in

a case compared to the press).  Mr. Wolfe also is not requesting a blanket limitation on all speech

by all parties involved in this case.  *See Brown*, 218 F.3d at 429-30.  Confirming or clarifying

what actually occurred in Court or what was stated in a filing is perfectly acceptable conduct,

consistent with the Local Rules.

       Such an Order also represents the least restrictive means necessary to safeguard Mr.

Wolfe's rights.  Mr. Wolfe does not seek an order gagging the news media, and seeking a change

of venue to another judicial district would be pointless[12] when the President is generating a large

part of the prejudice in his pronouncements to the national media.  Nor would voir dire or jury

---

57.7(b)(1), concerning "the character or reputation of the accused," LCrR 57.7(b)(3)(a), and
concerning "[a]ny opinion as to the accused's guilt or innocence or as to the merits of the case or
the evidence in the case." LCrR 57.7(b)(3)(vi). And, as another federal judge observed, "any
prejudicial effect of otherwise improper comments is [not] magically dispelled by sprinkling the
words 'allege(d)' or 'allegation(s)' liberally throughout the press conference or speech, or by
inserting a disclaimer that the accused is 'innocent unless and until proven guilty' at the end of
an otherwise improper press release."  *United States v. Silver*, 103 F.Supp.3d 370, 378 (S.D.N.Y.
2015) (first alteration added).

[11] Indeed, even the Indictment includes a gratuitous discussion of classified information, despite
the fact that Mr. Wolfe faces no charge involving classified information.  See Indictment at ¶ 2.

[12] Mr. Wolfe reserves his right to seek a venue change depending on further events or discovery.

instructions cure the effects of his pretrial verdict regarding Mr. Wolfe's conduct.  *See Brown*, 218 F.3d at 431; *see also Levine v. United States Dist. Ct. for the Cent. Dist. of Calif.*, 764 F.2d 590, 600 (1985) ("[V]oir dire cannot eliminate prejudice caused by publicity during the trial. Moreover, voir dire cannot alleviate the harm to the integrity of the judicial process caused by the extrajudicial statements of trial participants.").

III.    **President Trump Can Be Subject to a Restrictive Order**

The Court can appropriately include government supervisors up to and including the President within the ambit of such an order, especially where the President has already chosen to weigh in publicly on this particular criminal prosecution conducted by his Administration and declare Mr. Wolfe's guilt (of something he is not charged with).  It does not matter that the President is not himself a lawyer, or that he and other senior officials and supervisors are not physical or formally appearing in court on behalf of the government.  They have inserted themselves into this case either as part of the government "party" or as counsel to the government, and they present a significant, proven threat to Mr. Wolfe's right to a fair trial.[13]  As the head of the Executive Branch, the President is ultimately responsible for all powers wielded by that Branch, including prosecutorial powers.

---

[13] For example, in a situation where the U.S. Attorney for the Southern District of New York – who was not personally prosecuting the case in court – made numerous pronouncements following then-Speaker of the New York Assembly Sheldon Silver's arrest regarding the corrupt nature of his actions, the district court recognized that those statements could cause prejudice to the defendant.  *Silver*, 103 F. Supp. 3d at 379 (S.D.N.Y. 2015) (ultimately refusing to dismiss the Indictment – a step we are not asking the Court to take here – because the defense could not prove that the U.S. Attorney's statements had improperly and substantially influenced the grand jury decision to indict).  The court further noted that "[g]iven the fact that the U.S. Attorney apparently wanted to address the topic of public corruption in his speech, a far more prudent course—and one that would have been far more respectful of the Defendant's presumption of innocence and fair trial rights—would have been to delay the arrest until after the U.S. Attorney's speech and for the U.S. Attorney to stay focused on politicians who have actually been convicted."  *Id.*

The Supreme Court has emphasized in this context that the obligation of the Courts to safeguard defendants' Sixth Amendment rights is not limited to orders directed at just the lawyers specifically involved in a case: "Neither prosecutors, counsel for defense, the accused, witnesses, court staff nor enforcement officers coming under the jurisdiction of the court should be permitted to frustrate its function." *Sheppard*, 384 U.S. at 363.  Within this District, restrictive orders have been extended to cover supervisory lawyers who were not actually trying the case, restricting the extrajudicial commentary of "the lawyers appearing in this case or any persons associated with them, including any persons with supervisory authority over them."  *See United States v. Gray et al*, Case No. 00-cr-157 (RCL), 2001 WL 1000694, at *1 (D.D.C. June 14, 2001) (Exhibit 7) (vacated in 2004).[14]

---

[14] *See also In re Goode*, 821 F.3d 553, 557-58 (5th Cir. 2016) (approving the extension of speech restrictions to lawyers "associated with the prosecution or defense," while rejecting the overall local rule that restricted speech regardless of likelihood of prejudice).

## <u>CONCLUSION</u>

For the foregoing reasons, Defendant James A. Wolfe respectfully requests that this

Court issue an order prohibiting further extrajudicial statements by participants in this case,

including all relevant members of the Executive Branch, up to and including the President of the

United States.


DATED:        June 19, 2018            Respectfully submitted,


                                        _____/s/_____

                              By:     Benjamin Klubes (D.C. Bar No. 428852)
                                      Preston Burton (D.C. Bar No. 426378)
                                      Lauren R. Randell (D.C. Bar No. 503129)
                                      Buckley Sandler LLP
                                      1250 24th St. NW Ste. 700
                                      Washington, D.C.  20037
                                      (202) 349-8000

                                      *Counsel for Defendant James A. Wolfe*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on June 19, 2018, I electronically filed the foregoing **Defendant James A.**

**Wolfe's Motion for Order Governing Extrajudicial Statements Under Local Criminal Rule**

**57.7(c)** using the CM/ECF system, which will send notification of such filing to the counsel of

record in this matter who are registered on the CM/ECF.


_____/s/_____
Lauren R. Randell (D.C. Bar No. 503129)